## FLSA SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("FLSA Agreement") between Ryan Fenn ("Employee") and Mansfield Bank is made as of the date this FLSA Agreement is signed by Employee. Mansfield Bank and its parent companies, divisions, affiliates, subsidiaries, and operating companies are collectively referred to herein as the "Bank."

WHEREAS, Employee was employed by the Bank until on or about April 21, 2014;

WHEREAS, Employee filed a lawsuit entitled, *Fenn v. Mansfield Bank*, Docket No. 14-12554-NMG (the "Lawsuit") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and G.L. c. 151A (the "Wage Allegations"), as well as unlawful termination in VIOLATION of Chapter 151B and the Americans with Disabilities Act; and

WHEREAS, Employee and the Bank desire to settle fully and finally any differences Employee has with the Bank, including, without limitation, those outlined in the aforementioned Lawsuit, and any other claims or actions;

NOW, THEREFORE, in consideration of the promises and covenants below, including, but not limited to, the General Release of Claims, and for other good and valuable consideration as set forth in this FLSA Agreement, Employee and the Bank agree as follows:

1. **SETTLEMENT PAYMENT(S)**. For good and valuable consideration, upon full execution and effectuation of this FLSA Agreement, the Bank agrees to pay the total gross sum of TWELVE THOUSAND DOLLARS ($12,000) (the "Payment"), in full satisfaction of the Wage Allegations outlined above, and any other claims, actions or charges Employee has, claims to have, or may have, against the Released Parties (as defined below), including without limitation any claim for attorneys' fees or costs, in the following manner:

    a) A check in the amount of $8,000, less appropriate state and federal withholdings, to be made payable to "Ryan Fenn" as reimbursement for lost wages in connection with Employee's Wage Allegations as outlined in the Lawsuit, and any other claims, charges or actions Employee claims to, or may have, against the Bank. The Bank will withhold taxes from this portion of the Payment, and shall issue Employee a Form W-2 for this portion of the Payment.

    b) A check in the amount of $4,000 (the "Attorneys' Fees portion of the Payment") to be made payable to "Glynn, Landry & Rice, LLP." A Form 1099 will be issued by the Bank for this portion of the payment to both Employee and his attorneys.

    The Bank makes no representation or warranties regarding the taxability of the Attorneys' Fees portion of the Payment. Employee shall be solely responsible for the taxes, if any, payable on account of the Attorneys' Fees portion of the Payment. Employee shall indemnify the Bank for any interest, penalties or payments that it might be required to make on Employee's behalf or on account of Employee's non-payment of taxes.

1

Employee and the Bank agree that no part of any payments by the Bank pursuant to this FLSA Agreement constitutes (i) a fine or penalty paid to a government under any law or (ii) a payment to a government to settle any actual or potential liability for a punitive fine or penalty under any law. Employee agrees to provide the Bank with a completed Form W-9 from himself and his attorneys when returning this executed agreement to counsel for the Bank.

2. **SUFFICIENCY OF CONSIDERATION**. Except as specifically set forth in this FLSA Agreement, Employee shall be entitled to no other wages, salary, vacation pay, bonuses, incentive awards, commissions, benefits, stock, restricted stock units, stock options, or any other compensation of any kind. Employee acknowledges that the Payment described in this FLSA Agreement is good and valuable consideration for the release of claims and the other covenants and terms in this FLSA Agreement.

3. **DISMISSAL OF LAWSUIT**. Employee represents that, other than the Lawsuit, he has not filed or initiated, has caused to be filed or initiated, or is a party to any complaint, claim, action or lawsuit of any kind against any of the Released Parties in any federal, state, or local court or agency. After execution of this FLSA Agreement by the parties, Employee and the Bank will file with the Court a joint motion seeking judicial approval of this FLSA Agreement and the terms of the settlement, together with a proposed order and judgment dismissing the action with prejudice in the form attached as Exhibit A. Employee and his counsel shall effectuate dismissal through the filing and entry by the Court of the (1) "Joint Motion for Approval of Settlement Agreement and Entry of Stipulated Judgment" and (2) "Stipulation and [Proposed] Order Approving Settlement, and Dismissing the Case with Prejudice," attached hereto as Exhibit A. The parties and their attorneys agree to cooperate in good faith in taking any necessary action to obtain final approval of the FLSA Agreement, to implement the terms and conditions in the FLSA Agreement, and dismissal of the Lawsuit with prejudice. The parties agree that the Bank shall not make any payment to Employee unless and until the Court approves the settlement in a form satisfactory to the Bank and dismisses the case with prejudice. Employee agrees that to the extent any other action he has filed remains outstanding against the Bank as of the date of execution of this FLSA Agreement, Employee will take all steps necessary to facilitate and ensure the withdrawal of the same with prejudice. The Bank shall make payment within twenty one (21) days of the latter of the Effective Date (defined below) or the dismissal with prejudice by the Court. Should the Court not approve this FLSA Agreement, the parties shall negotiate in good faith to effectuate a settlement of this matter in a form acceptable to the Bank.

4. **WAIVER AND RELEASE OF FLSA CLAIMS**. Upon execution and effectuation of this FLSA Agreement, Employee hereby releases and forever discharges the Bank and each of its divisions, affiliates, subsidiaries, operating companies, parent companies, and the respective officers, directors, employees, supervisors, managers, insurers, reinsurers, attorneys, agents, representatives, affiliates, and anyone or thing acting on the behalf of each of them (collectively, the "Released Parties") from any and all causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, and attorneys' fees against the Released Parties, whether known or unknown, which Employee ever had, now has or which Employee or Employee's heirs, executors, administrators, successors or assigns may have prior to the date this FLSA Agreement is signed by

Employee for wages or compensation of any nature including but not limited to salary, hourly pay, commissions, bonuses, overtime pay, the amount of pay, the timing means or manner of payment, back pay, front pay, unpaid wages, related penalties, interest, lost benefits, compensatory damages, liquidated damages, punitive damages, attorney's fees, expert's fees, costs and any other element of relief or damages which he claimed or could have claimed in the Lawsuit or in any other actions against the Bank, including without limitation claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and all Massachusetts state laws pertaining to the payment of wages and compensation including, including without limitation G.L. c. 149, § 148, 150 et seq. and G.L. c. 151, §1A. Notwithstanding the foregoing, this release does not include any rights that Employee cannot lawfully waive, and will not release any rights Employee has to (a) claims, actions, or rights arising under or to enforce the terms of this FLSA Agreement; and/or (b) vested benefits under any retirement or pension plan and/or deferred compensation plan.

5. **COVENANT NOT TO SUE.** Employee agrees not to initiate or file, or cause to be initiated or filed, any action, lawsuit, complaint, arbitration proceeding, or other proceeding asserting any of the Released Claims against any of the Released Parties. Employee further agrees not to be a member of any class or collective action in any court or in any arbitration proceeding seeking relief against the Released Parties based on claims released by this FLSA Agreement, and that even if a court or arbitrator rules that Employee may not waive a claim released by this FLSA Agreement, Employee will not accept any money damages or other relief. Employee agrees to promptly reimburse the Bank for any legal fees that the Bank incurs as a result of any breach of this Section by Employee. Nothing in this FLSA Agreement is intended to or shall interfere with Employee's right to file a charge or complaint with, or participate in an investigation or proceeding conducted by, the National Labor Relations Board ("NLRB"), or to exercise rights under Section 7 of the National Labor Relations Act ("NLRA"), or interfere with Employee's right to file a charge or participate or cooperate in an investigation or proceeding with the US Equal Employment Opportunity Commission ("EEOC") or comparable state or local agencies; such agencies have authority to carry out their statutory duties by investigating a charge, issuing a determination, filing a lawsuit, or taking any other action authorized by law. Employee retains the right to participate in any such action, and retains the right to communicate with the NLRB, EEOC and comparable state or local agencies and such communication shall not be limited by any provision in this FLSA Agreement, including without limitation the confidentiality or non-disparagement provisions herein. Employee shall not, however, be entitled to receive any relief, recovery or monies in connection with any claim or action filed with and/or pursued by any such agency, or any Released Claim brought against any of the Released Parties, regardless of who filed or initiated any such complaint, charge or proceeding.

6. **CONFIDENTIALITY.** Employee acknowledges, represents and agrees that Employee will keep all of the terms and conditions of this FLSA Agreement strictly confidential unless otherwise required pursuant to legal process. Employee represents that Employee has not disclosed and will not disclose the existence of this FLSA Agreement or any of its terms or conditions to anyone other than Employee's attorney, tax or financial advisor, immediate family member, or as may be required pursuant to legal process. Employee further agrees to take reasonable steps to ensure that any information concerning this FLSA Agreement which is disclosed to Employee's attorney, tax or financial advisor, or immediate family member

will not be disclosed to any other third party, including informing such persons that the terms and conditions of this FLSA Agreement are strictly confidential and they may not be discussed.

7. **NO FUTURE EMPLOYMENT.** Employee acknowledges and understands that Employee is no longer employed by the Bank, and that Employee will not be considered for employment by the Bank in the future. Employee hereby covenants that Employee shall not apply for or otherwise seek employment with the Bank, and specifically waives any right or claim to reemployment.

8. **RETURN OF PROPERTY.** Employee acknowledges, represents and agrees that Employee has returned to the Bank all property of the Bank in Employee's control or possession, including, but not limited to, the originals and copies of any information provided to or acquired by Employee in connection with the performance of work for the Bank, including, but not limited to, all files, correspondence, communications, memoranda, e-mails, slides, records, passwords, and all other documents, no matter how produced or reproduced, all computer equipment, programs and files, all office keys and access cards, and any other business-related materials or property; it being hereby acknowledged that all of said items are the sole and exclusive property of the Bank.

9. **COOPERATION.**

   a) Employee acknowledges, represents and agrees that, in the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order relating to any civil, criminal or administrative investigation, suit, proceeding or other legal matter relating to the Bank from any investigator, attorney or any other third party, Employee agrees to promptly notify the Bank by telephone and in writing. Without limiting the generality of the preceding sentence, in the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order, if the Bank objects to the subpoena, deposition notice, interview request, inquiry, process, or order, Employee shall cooperate to ensure that there shall be no disclosure until the court or other applicable entity has ruled upon the objection, and then only in accordance with the ruling so made. Nothing in this FLSA Agreement shall be construed to prohibit Employee from testifying truthfully in any legal proceeding. Nothing in this paragraph shall apply to nor can be construed to limit communications between Employee and his present attorney, Daniel W. Rice, and those communications will remain privileged.

   b) Employee acknowledges, represents and agrees that Employee shall cooperate fully with the Bank and its legal counsel in connection with any action, proceeding, or dispute arising out of matters with which Employee was directly or indirectly involved while serving as an employee of the Bank. This cooperation shall include, but shall not be limited to, meeting with, and providing information to, the Bank and its legal counsel, maintaining the confidentiality of any past or future privileged communications with the Bank's legal counsel (outside and in-house), and making himself or herself available to testify truthfully by affidavit, in depositions, or in any other forum on behalf of the Bank.

10. **NON-ADMISSION OF WRONGDOING.** Employee and the Bank agree that neither this FLSA Agreement nor the furnishing of consideration hereunder shall be deemed or construed at any time for any purpose as an admission by either party of any liability, wrongdoing or unlawful conduct (including without limitation as to Employee or any other employees and former employees of the Bank), and the Bank expressly denies any such liability, wrongdoing or unlawful conduct.

11. **GOVERNING LAW.** This FLSA Agreement shall be governed by and conformed in accordance with the laws of Massachusetts without regard to its conflict of laws provisions.

12. **UNDERSTANDING OF AGREEMENT; ADVICE OF COUNSEL.** Employee acknowledges that Employee has been given a reasonable period of time in which to consider the terms of this FLSA Agreement before signing it. Employee acknowledges and confirms that Employee has entered into this FLSA Agreement voluntarily and of Employee's own free will, without duress or coercion. Employee acknowledges that Employee has carefully read and fully understands the meaning and intent of this FLSA Agreement and is competent to execute it. The Bank hereby advises Employee to seek the advice of an attorney of Employee's choosing concerning this FLSA Agreement before signing this FLSA Agreement, and Employee represents that Employee has had the opportunity to do so prior to signing this FLSA Agreement.

13. **MEDICARE.** Employee, upon consultation with counsel, warrants that Employee is not a Medicare beneficiary as of the date of this release, and no conditional payments have been made by Medicare on Employee's behalf. The parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec. 1395y(b). While Employee and Employee's counsel warrant that Employee is not and has never been a Medicare beneficiary and thus there is no obligation to report this settlement to the Center for Medicare, Medicaid Services ("CMS") pursuant to 42 U.S.C 1395y(b), if it is ever determined that Employee is/was such a beneficiary, Employee acknowledges Employee's duty to cooperate with Bank in order to allow it and/or the Responsible Reporting Entity ("RRE") to fulfill the obligation to comply with any reporting requirement under such law. Employee agrees to provide the Bank with any and all information necessary for it and/or the RRE to comply with Section 111 of MMSEA. The parties acknowledge and understand that any present or future action by CMS or Medicare on this settlement, or Employee's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

14. **LIENS.** Employee warrants that all bills, costs, or liens resulting from or arising out of Employee's alleged injuries, claims or Lawsuit are Employee's responsibility to pay. Employee agrees to assume responsibility for the satisfaction of any and all rights to payment, claims or liens of any kind, that arise from or are related to payments made or services provided to Employee or on Employee's behalf. Employee agrees to assume responsibility for all expenses, costs or fees incurred by Employee related to Employee's alleged injuries, claims or Lawsuit, including without limitation, all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment

or lost wages that have been or may be asserted by any healthcare provider, insurer, governmental entity, employer or other person or entity. Further, Employee will indemnify, defend, and hold the Bank and the Released Parties harmless from any and all damages, claims and rights to payment, including any attorneys' fees, brought by any person, entity or governmental agency to recover any of these amounts.

15. **REVIEW AND REVOCATION OF AGREEMENT.** Employee affirms that he has not attained the age of 40. Employee has twenty-one (21) days from the date of receipt (the "Consideration Period") to consider whether to enter into this FLSA Agreement. If Employee chooses not to consider this FLSA Agreement for the full twenty-one (21) days, Employee acknowledges that Employee does so knowingly, voluntarily, on advice of counsel, and with full understanding that Employee is waiving Employee's right to consider this for the full twenty-one (21) days. Any modifications to this FLSA Agreement, whether material or immaterial, will not restart the Consideration Period. The Bank hereby advises Employee to consult with an attorney prior to executing this Agreement. This FLSA Agreement becomes fully enforceable and effective on the date it is fully executed (the "Effective Date").

16. **JURY TRIAL WAIVER.** Employee and the Bank irrevocably and unconditionally waive the right to a trial by jury in any action or proceeding seeking to enforce, or alleging the breach of, any provision of this FLSA Agreement.

17. **COUNTERPARTS AND SCANNED SIGNATURE**. This FLSA Agreement may be executed in counterparts and each counterpart will be deemed an original. A scanned or facsimile signature shall be considered an original for all purposes, and the parties anticipate exchanging signatures by PDF.

18. **SECTION HEADINGS**. Section headings contained in this FLSA Agreement are for convenience of reference only and shall not affect the meaning of any provision herein.

19. **SEVERABILITY**. Should any term or provision of this FLSA Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction and if such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this FLSA Agreement in full force and effect. Provided however, if the General Release of Claims provision of this FLSA Agreement is found invalid, illegal, and/or unenforceable, Employee agrees to provide the Bank and the Released Parties a full and general Release of any and all causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, and attorneys fees, whether known or unknown, which Employee ever had, has, or which Employee or Employee's heirs, executors, administrators, successors or assigns may have, prior to the date this FLSA Agreement is signed by Employee, due to any matter whatsoever, that is not invalid, illegal and/or unenforceable, without payment of additional consideration. The language of all parts of this FLSA Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

IN WITNESS WHEREOF, the parties knowingly and voluntarily executed this Settlement Agreement and General Release as of the dates set forth below.

**RYAN FENN**

_____

DATE: 5/28/2015

**MANSFIELD BANK**

BY: _____
NAME: John R. Korona
TITLE: President/CEO
DATE: 6/2/2015

7